**Ramon LOPEZ, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant.**

**Civ. A. No. M-79-2333.**

United States District Court, D. Maryland.

May 19, 1980.

Jackques E. Opal, Hyattsville, Md., for plaintiff.

Peter F. Axelrad, Leonard E. Cohen and Monte Fried, Baltimore, Md., for defendant.

Leroy D. Clark, Joseph T. Eddins, Lutz Alexander Prager, Paul E. Mirengoff and Raymond R. Baca, Washington, D.C., for EEOC.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Ramon Lopez, initiated this action against his former employer, defendant Sears, Roebuck & Company ("Sears") seeking damages along with declaratory and injunctive relief for alleged discriminatory employment practices. The action was filed pursuant to 42 U.S.C. § 2000e *et seq.* of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Title VII), the Thirteenth Amendment to the Constitution, 42 U.S.C. § 1981, and 42 U.S.C. § 1988. Presently pending before the Court is a Motion to Dismiss (Paper 8) filed by the defendant as to all causes of action alleged in the Complaint.

The plaintiff, a "non-white Spanish surnamed Maylay (brown) permanent resident alien" (Paper 1, paragraph 4), alleges that he was constructively discharged by the defendant on December 9, 1978, because of his race, color, and national origin. The plaintiff further alleges that the defendant has pursued various other employment practices which effectively denied equal employment opportunities to non-white (brown) Maylay and Spanish-surnamed employees.

### I. *Plaintiff's Title VII Claims*

The defendant contends that the plaintiff's Title VII claims should be dismissed in that the plaintiff failed to file timely charges with the Equal Employment Opportunity Commission (EEOC).

 Section 706(e) of Title VII requires, in pertinent part, that charges be filed with the EEOC "within one hundred eighty days

after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e). Timely filing, in accordance with this section, is a jurisdictional prerequisite to the maintenance of a Title VII action. *See, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n.4, 97 S.Ct. 1885, 1887, n.4, 52 L.Ed.2d 571 (1977), and cases cited therein.

In the present case the plaintiff was discharged from his employment with the defendant company on December 9, 1978. The plaintiff filed formal charges with the EEOC on July 9, 1979, 212 days after his discharge. The defendant therefore contends that the plaintiff has failed to satisfy the jurisdictional prerequisite of filing timely charges.

The defendant has submitted a letter from the EEOC to the plaintiff dated September 17, 1979, stating that the EEOC dismissed the plaintiff's charge "because it was filed in an untimely manner." (Paper 8, Ex. A). At that time the EEOC also issued a Notice of Right to Sue.[1] The plaintiff has referred the Court to a second letter from the EEOC to the plaintiff, dated February 26, 1980, wherein the District Director of the Baltimore EEOC Office "revoke[d] the dismissal letter and the Notice of Right to Sue issued by this office on September 17, 1979." (Paper 11, Ex. A). This action was purportedly taken pursuant to 29 CFR § 1601.21(d). The plaintiff is claiming that there has been no determination that his claim was untimely filed with the EEOC.

On April 11, 1980, a hearing was held on the defendant's pending Motion to Dismiss. At that time plaintiff's counsel, along with counsel for the EEOC[2], advanced a new theory in response to the defendant's motion. The plaintiff is now arguing that a newly discovered document in the plaintiff's EEOC case file indicates that a copy of the plaintiff's charge filed with the EEOC on July 9, 1979, was forwarded to

---

[1]. Under 42 U.S.C. § 2000e-5(e), the plaintiff has 90 days following the receipt of a Notice of Right to Sue from the EEOC in which to file a private action in federal court.

[2]. The EEOC was granted permission to participate as *amicus curiae* in this action. (Paper 20).

the Montgomery County Human Relations Commission (MCHRC) on July 10, 1980. Accordingly, pursuant to 42 U.S.C. § 706(e) and the Fourth Circuit decision in *Doski v. M. Goldseker Co.*, 539 F.2d 1326 (4th Cir. 1976), the plaintiff contends that he had 300 days in which to file charges with the EEOC, and his July 9, 1979 filing was therefore timely.

As previously noted, it is apparent that the filing of timely charges with the EEOC is a jurisdictional prerequisite to maintaining a Title VII cause of action in district court on those charges. *United Air Lines, Inc. v. Evans, supra* 431 U.S. at 555 n.4, 97 S.Ct. at 1887 n.4, *citing Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Thus it is initially necessary to determine whether the 180-day filing period, or the extended 300-day period is applicable, given the facts of this case.

### A. Is the 300-Day Extended Filing Period Applicable?

Section 706(e) of Title VII provides that charges must generally be filed with the EEOC within 180 days of the alleged unlawful practice, with the following major exception:

> ". . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency . . . .. such charge shall be filed . . . .. within three hundred days after the alleged un-

lawful employment practice occurred . . . .."

42 U.S.C. § 2000e–5(e). At the April 11, 1980 hearing in this matter, the plaintiff introduced a "charge transmittal" letter dated July 9, 1979, from the EEOC to Alan Dean, The Executive Secretary of MCHRC. The plaintiff claims that his charges were filed with the MCHRC, and that, therefore, the extended 300-day EEOC filing period is applicable. In response the defendant argues that the plaintiff's charge was never received by, or filed with, the MCHRC as alleged, and further, even if the charge was filed with the MCHRC, it still would not trigger the extended EEOC filing period, in light of the Work Sharing Agreement which existed between the EEOC and the MCHRC.

### 1. Was the Plaintiff's Charge Filed With the MCHRC?

The defendant contends that notwithstanding the charge transmittal document produced by the plaintiff, the facts indicate that the plaintiff's charge was not, in fact, sent to the MCHRC as stated in the document. Although there may be doubt as to whether the plaintiff's charge was transmitted as stated[3], it is certainly not a fact which could be ruled on as a matter of law. Thus, for the purposes of the present motion, the court will assume that the plaintiff's charge was transmitted to the MCHRC as indicated on the proffered charge transmittal form.

---

**3.** The defendant notes the following circumstances which undermine the plaintiff's contention that the plaintiff's charge was transmitted to the MCHRC:

(1) The charge transmittal document was not contained in the plaintiff's EEOC case file when initially inspected on March 20, 1980, and was only produced at the hearing on this motion held on April 11, 1980;

(2) The receipt form to be executed by the MCHRC, xeroxed for its files, and returned to the EEOC by the MCHRC was apparently never filled out, and no xerox of the completed form is contained in the MCHRC files;

(3) The form was never date-stamped by MCHRC, as is the standard practice of the agency; and

(4) The EEOC's "Charge and Inquiry Analysis" sheet relating to the plaintiff's claim (See Paper 24, Ex. A) seemingly indicates that the charge transmittal form (Form 212–A) was sent to MCHRC, but that the charge itself was not forwarded to the agency. (The Affidavit of Dorothy Mead submitted by the plaintiff as an attachment to Paper 25 raises a further issue of fact as to whether the charge was forwarded).

The deposition testimony of Mr. Dean as to whether the plaintiff's charge was actually filed with the MCHRC is inconclusive. Since a question of fact obviously exists as to whether the plaintiff's charge was actually forwarded to the MCHRC, summary judgment based on this issue would be improper.

### 2. Did The Plaintiff "Initially Institute Proceedings" With the MCHRC?

As stated by the plaintiff, a charge is timely filed with the EEOC within 300 days of the alleged discriminatory practice if the charge has been timely filed with a state or local agency. *Doski v. M. Goldseker Co.,* 539 F.2d 1326 (4th Cir. 1976). *See also, Ugianski v. Flynn and Emrich Co.,* 337 F.Supp. 807 (D. Md. 1972). The plaintiff contends that the present charge was properly filed with the EEOC since it was referred to the MCHRC in a timely fashion. The plaintiff contends that it is immaterial that, pursuant to the Work Sharing Agreement then in effect between the EEOC and the MCHRC, the EEOC was initially to process the plaintiff's charge. The defendant, however, contends that the relevant provisions of the Work Sharing Agreement indicate that the transmittal of the plaintiff's claim to the MCHRC was for informational purposes only, since the EEOC was to process the charge, and that the extended limitations period provided under the statute should be inapplicable.

The Work Sharing Agreement in effect at the relevant time provided that the "EEOC [would] take primary responsibility for processing all charges received by EEOC." *i. e.* charges such as that filed by the plaintiff. (*See* Paper 24, Ex. B, Paragraph 7). Thus, as was emphasized in Mr. Dean's deposition, the referral in the present case was for "informational" purposes, since the charge was to be initially processed by the EEOC. (*See* Paper 23, pgs. 39–41). The Work Sharing Agreement further provides that "Any charge on which advance agreement has been reached pursuant to paragraphs 7 and 8 below will not be acted upon by [MCHRC] until EEOC has resolved the charge."

■ The court finds that under the facts of this case the transmittal of charges did not constitute a filing with the MCHRC and, therefore, the extended 300-day filing period is inapplicable.

In discussing the meaning of the phrase "initially instituted", the Fourth Circuit in *Doski v. M. Goldseker Co., supra* at 1330, stated:

"[T]he meaning of the phrase is well settled: the state or local agency should be given first opportunity to act on the complaint."

(Citing *Ugianski v. Flynn and Emrich Co., supra* at 808 n.1). Thus the Court notes that the order of the filing is immaterial so long as charges are timely filed with a state agency and also filed with the EEOC at some time within the extended limitations period under the statute.

In the present case it is apparent that the rationale for allowing an extended EEOC filing period is lacking. The copy of the plaintiff's charge which was presumably sent to the MCHRC, was transmitted with the understanding that, pursuant to the Work Sharing Agreement, the charge would be processed by the EEOC. Under the terms of the Work Sharing Agreement, the MCHRC would not act on the charge until the EEOC had "resolved" the matter. In these circumstances, the plaintiff's charge was submitted to the MCHRC for informational purposes, with no contemplation on the part of the agencies that MCHRC would process the plaintiff's case. Accordingly, the charges were never actually "instituted" with the MCHRC, within the meaning of § 2000e–5(e), since there was no filing with an intent that the MCHRC would process the charge. Thus, the 180-day filing period is applicable in this case.

### B. Was the Charge Timely Filed Within the 180-Day Period

■ The next issue which must be addressed is when the charges in the present case were in fact filed with the EEOC. Initially, it is apparent that the EEOC's revocation of its prior dismissal of the plaintiff's charges as untimely does not automatically confer jurisdiction on this court. Rather, the plaintiff still bears the burden of affirmatively showing that his charges were filed with the EEOC within 180 days of the alleged unlawful employment practice.

■ On the face of the complaint, it appears that the plaintiff's charges, which

were formally filed July 9, 1978, were not filed in a timely fashion. The plaintiff, however, maintains that his charges were actually timely filed on May 17, 1979. In support of this, the plaintiff argues that on May 17, 1979 he communicated his complaint via telephone to Mrs. Byrd in the Baltimore EEOC District Office, who reduced the substance of the complaint to writing. The plaintiff also states that on June 12, 1979, he visited the EEOC office where he spoke to Mr. Braden, who purportedly agreed with the plaintiff that his complaint had been timely filed as of May 17, 1979.[4] Mr. Braden also purportedly agreed with the plaintiff that he should attempt to settle his dispute with Sears. When conciliation efforts failed, the plaintiff filed signed and verified charges with the EEOC on July 9, 1979. The plaintiff maintains that the filing of these formal charges should relate back to his May 17, 1979 initial contact with the EEOC.

In support of the plaintiff's contention that his May 17, 1979 contact with the EEOC office constituted "filing" of charges, the plaintiff cites at length the EEOC Regulations and Guidelines. (29 CFR § 1601.7, et seq.). Although these regulations afford a complainant wide latitude in the manner in which charges are filed, they do not contemplate that telephone conversations be construed to be a filing of charges. Specifically, 29 CFR § 1601.8 allows a charge to "be made in person or by mail". Further, 29 CFR § 1601.9 states that "[a] charge shall be in writing and signed and shall be verified.[5]" The notes taken by Mrs. Byrd were not filed on the plaintiff's behalf as a formal "charge"[6].

The plaintiff's complaint was not timely filed with the EEOC, and this Court is without jurisdiction over the plaintiff's Title VII claim. Accordingly, the defendant's motion to dismiss plaintiff's Title VII claim will be GRANTED.

## II. Plaintiff's Thirteenth Amendment Claim

The defendant has moved to dismiss the plaintiff's Thirteenth Amendment claim on the grounds that the Thirteenth Amendment forms the proper basis for a cause of action only where the plaintiff alleges that he has been forced to work against his will. In the present case the plaintiff alleges that he was constructively denied employment by the defendant, and thus the plaintiff has failed to state a cognizable claim under the Thirteenth Amendment.

 The court agrees with the defendant that the Thirteenth Amendment, by its very terms, prohibits "involuntary servitude"[7]. The Amendment does not, in any way, address issues of employment discrimination allegedly based on race or nationality. Although the Thirteenth Amendment provides the constitutional basis for claims

---

4. The Court notes that June 12, 1979 was 185 days from the alleged improper action by the defendant. Therefore, even if the plaintiff were said to have relied on Mr. Braden's representations and not filed on that date, and the statute were tolled until the plaintiff did actually file, the complaint would still not be timely.

5. As cited by the plaintiff, the applicable case law indicates that courts will liberally construe the formal EEOC requirements. None of these cases, however, go so far as to state that the plaintiff need not file some kind of written charges. Although the courts will liberally treat writings that are filed, it seems that some kind of written charges must be filed.

6. Defendant's Reply Memorandum contains copies of the memos contained in the EEOC file. The record of the May 17, 1979 conversation indicates that Mrs. Byrd took notes and filed them with the understanding that the plaintiff "[would] be in to file a complaint." (Paper 17). There is no indication that Mrs. Byrd's notes were contemplated to be a formal written grievance filed on behalf of the plaintiff. Further, although under EEOC regulations, an agent may file a complaint on behalf of a party, it is incongruous to argue that EEOC employees would themselves act as agents in filing grievances without specific authority of the charging party so to do, for this would clearly involve a conflict of interests.

7. For a discussion of the development and focus of the Thirteenth Amendment, see United States v. Shackney, 333 F.2d 475 (2nd Cir. 1964).

arising under 42 U.S.C. § 1981 and other implementing statutes, it does not operate as an independent ground for a cause of action. *See, Byrd v. Local Union No. 24, Int. Bro. of Electrical Workers*, 375 F.Supp. 545, 552 (D. Md. 1974); *Clark v. Universal Builders, Inc.*, 409 F.Supp. 1274, 1279 (N.D. Ill. 1976). The plaintiff's claims alleged under the Thirteenth Amendment will be dismissed.

### III. Plaintiff's § 1981 Claims

42 U.S.C. § 1981 provides, in pertinent part, as follows:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

Thus, by its very terms, the statutory intent of § 1981 is to alleviate racial discrimination. It is also clear § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). The defendant claims that in the present case the plaintiff's discrimination claims based on race are sufficiently intertwined with his claims based on national origin so as to taint the entire action, thus making it improper to bring suit under § 1981.[8] The plaintiff, however, contends that his allegations of discrimination are dually based on race and nationality and therefore are properly brought under this section.

The defendant cites Judge Murray's opinion in *Martinez v. Hazelton Research Animals*, 430 F.Supp. 186 (D. Md. 1977) in support of its contention that a discrimination suit brought by an Hispanic male does not state a proper cause of action under § 1981. In *Martinez*, Judge Murray stated:

> "[T]his court finds that the allegation that the plaintiff is an Hispanic male, without more, is an insufficient allegation of racial background to support an allegation of racial discrimination and thus to state a cause of action under 42 U.S.C. § 1981". *Id.* at 188.

This case, however, does not stand for a sweeping proposition that no civil rights action may properly be brought by an Hispanic individual under § 1981. As *Martinez v. Hazelton Research Animals, Inc.*, 430 F.Supp. 186 (D.C.) specifically noted:

> "While it might be true that Hispanic individuals may suffer discrimination closely akin to that experienced by members of the black race, it is not necessarily true of all Hispanic people. As noted by this court at the time of oral argument on this motion, many people of Hispanic origin cannot be classified as 'non-whites'". *Id.* at 187–8.

Judge Murray in *Martinez* went on to grant the plaintiff leave to amend his complaint in order to state facts to support a cause of action based on racial discrimination.

In the present case the plaintiff has clearly stated that the alleged discrimination is based both on nationality (Hispanic) and race (brown). These allegations distinguish the present case from the situation presented in *Martinez*, for the plaintiff here has already alleged racial animus as a basis for suit. The defendant's motion to dismiss will be denied as to the § 1981 cause of action.

### IV. Plaintiff's § 1988 Claims

42 U.S.C. § 1988 provides, in pertinent part, as follows:

> "The jurisdiction in civil and criminal matters conferred on the district courts

---

**8.** Discrimination based on national origin is not encompassed by § 1981. *See, Plummer v. Chicago Journeyman Plumbers' Local Union No. 130*, 452 F.Supp. 1127 (N.D. Ill. 1978); *Budin-* *sky v. Corning Glass Works*, 425 F.Supp. 786 (W.D. Pa. 1977); *Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (E.D. Pa. 1978).

by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . .."

As the Supreme Court stated in *Moor v. County of Alameda*, 411 U.S. 693, 702–703, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596, *reh. den.* 412 U.S. 963, 93 S.Ct. 2999, 37 L.Ed.2d 1012 (1973):

> "Section 1988 does not enjoy the independent stature of an 'Act of Congress providing for the protection of civil rights' 28 U.S.C. § 1343(4). Rather, as is plain on the face of the statute, the section is intended to complement the various acts which do create federal causes of action for the violation of federal civil rights. [Footnote cite to 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 18 U.S.C. §§ 241–245] . . . [I]nevitably existing federal law will not cover every issue that may arise in the context of a federal civil rights action. Thus, § 1988 proceeds to authorize federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies', to look to principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States."

In the present case, the plaintiff has a sufficient federal remedy under 42 U.S.C. § 1981. Thus, as stated in *Moore*, § 1988 does not operate to confer an independent basis of federal jurisdiction. Accordingly, the defendant's Motion to Dismiss the plaintiff's claims brought pursuant to § 1988 is GRANTED.

### V. Conclusion

For the reasons stated herein, it is ORDERED this 19th day of May, 1980, by the United States District Court for the District of Maryland that the defendant's Motion to Dismiss is GRANTED in part and DENIED in part as follows:

1. As to plaintiff's Title VII claims, the defendant's motion is GRANTED;

2. As to the plaintiff's Thirteenth Amendment claims, the defendant's motion is GRANTED;

3. As to the plaintiff's § 1981 claims, the defendant's motion is DENIED;

4. As to the plaintiff's § 1988 claims, the defendant's motion is GRANTED.