Patricia A. DIXON

v.

WESTINGHOUSE ELECTRIC CORP.

Civ. No. Y–83–3034.

United States District Court,
D. Maryland.

Aug. 19, 1985.

Mark E. Herman, Baltimore, Md., for plaintiff.

Leonard E. Cohen and Monte Fried, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

## I. BACKGROUND

The plaintiff instituted this action against her employer, Westinghouse Electric Corporation ("Westinghouse") seeking a declaratory judgment and injunctive relief as well as money damages. In Count I of her complaint, she seeks recovery for discriminatory employment practices pursuant to 42 U.S.C. § 2000e *et seq.* of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Title VII). Count II alleges that these practices constitute the intentional infliction of emotional distress under Maryland law. Defendant has filed a motion and supplemental motion for summary judgment as to both Counts I and II of the complaint.

Plaintiff, an employee with more than ten years service in the defendant's drafting department, alleges that she was discharged on December 18, 1981 because of her sex. She also charges, in essence, that she was required to provide more documentation and verification of the medical nature of her absence than were similarly situated male employees "out on disability."

Westinghouse contends that the plaintiff was discharged for excessive absenteeism after having missed substantial time from work before and after an automobile accident in June, 1980.[1] Defendant also alleges that the plaintiff did not report regularly to her supervisor to apprise him of her situation and condition during these absences, and did not document and substantiate the reasons for her prolonged absences. Additionally, when reports were received concerning the plaintiff's condition, the information usually came from third parties (*e.g.*, plaintiff's roommate, daughter, sister, and son), and often was ambiguous and contradictory. Defendant insists that the plaintiff was discharged pursuant to a provision in the collective bargaining agreement[2] only after repeated requests for medical documentation went unanswered. Plaintiff is alleged to have been counseled, warned, and subjected to progressive discipline before she finally was discharged. Defendant also notes that it voluntarily reinstated the plaintiff to her prior position on January 3, 1983, at a salary she would have received had she been continuously employed between December 18, 1981 and January 3, 1983.[3]

Following her termination in December, 1981, plaintiff challenged defendant's action in two separate proceedings. Initially she filed a grievance under the collective bargaining agreement in effect between Westinghouse and the Salaried Employees Association ("SEA"). Subsequently, on August 4, 1982, she filed a charge of discrimination with the EEOC, 230 days after

---

**1.** Plaintiff apparently sustained injuries to her neck, shoulder, jaw, and teeth (Plaintiff's Deposition, pp. 52–53), in a non-work related accident in front of the Westinghouse facility where she was employed in Anne Arundel County, Maryland. Plaintiff also states that she has suffered emotional distress as a result of her accident. (*Id.*, pp. 54–57, 72, 73).

Uncontroverted evidence supplied by defendant Westinghouse indicates that the plaintiff was absent 36.6% of the available work days in 1978, 21.5% in 1979, 60% in 1980, and 42.9% in 1981. (Defendant's Exhibit # 4).

**2.** This provision states that:

An employee who is absent without permission for a period of five (5) working days, and the employee's supervisor, or in his absence, the Medical Department, has not received a report during this period giving a satisfactory reason for such absence, shall be considered as having voluntarily quit unless he can show extenuating circumstances making it impossible for him to report. (*See* Brooks Deposition, pp. 104, 106–07).

**3.** Defendant actually offered the plaintiff reinstatement on or about November 2, 1982 (Defendant's Exhibit # 10 Plaintiff's Deposition, p. 293), and plaintiff resumed her position on January 3, 1983. (Defendant's Exhibit # 10, Plaintiff's Deposition, pp. 34, 167, 320–21; Brooks Deposition, p. 320).

her discharge. Plaintiff's grievance presumably was resolved by defendant's offer of reinstatement on November 2, 1982 following discussions between the union, company, and EEOC representatives. The EEOC made no finding on Dixon's charge. Instead, the Commission terminated its processing of the charge and issued plaintiff a Right to Sue Notice on June 16, 1983.

## II. PLAINTIFF'S TITLE VII CLAIM

Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), governs the filing of timely charges of discrimination with the EEOC. Subsection (e) states that:

A charge under this section shall be filed within *one hundred* and *eighty days* after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has *initially instituted* proceedings with a state or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within *three hundred days* after the alleged unlawful employment practice occurred.... (emphasis added).

"The effective filing of a timely charge with the EEOC is a prerequisite to the invocation of the administrative process within the EEOC, § 706(c), and to the maintenance of an action in the district court." *Citicorp v. Brazell,* 658 F.2d 232, 234 (4th Cir.1981) (citing § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1)); *Lopez v. Sears, Roebuck, and Co.,* 493 F.Supp. 801, 804 (D.Md.1980).

Defendant contends that plaintiff's claim is time barred because it was not filed within the 180 day period provided for such filings in § 706(e). Plaintiff counters that the filing is timely under the subsection's 300 day filing period rather than the 180 day period, and submits that although she did not file a charge with any state or local agency, (Plaintiff's Deposition, p. 244), the 300 day filing period provided for discrimination charges "initially instituted" with a state or local agency should nonetheless apply because the EEOC transmitted the charge to the Maryland Commission on Human Relations ("MCHR"). (Plaintiff's Exhibits #1 and 1A; Affidavit of Leo Sanchez, ¶¶ 2, 3).

However, assuming that plaintiff's EEOC charge was transmitted to, and received by the MCHR, the charge is not timely filed with the EEOC because it was filed after the 180 day period had expired and state agency proceedings were never "initially instituted." Nor could such proceedings involving plaintiff's charge have been instituted in view of the contractual relationship which existed between the EEOC and the MCHR as illustrated by their Work Sharing Agreement. *See Lopez,* 493 F.Supp. at 805.

Plaintiff vigorously disputes this proposition and cites numerous cases as well as a provision of the Code of Federal Regulations in support of her contentions. However, plaintiff's cases address the issue of whether a charge must be filed with a deferral state agency within the limitations period set forth in the applicable state statute in order to take advantage of the 300 day extended filing period under Title VII. *See, e.g., Soble v. University of Maryland,* 572 F.Supp. 1509, 1512–13 (D.Md.1983); *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614 (6th Cir.1983); *Jones v. Airco Carbide,* 691 F.2d 1200 (6th Cir. 1982); these cases are distinguishable and the issue they address is separate and distinct from the question presented here— *i.e.,* whether the mere submission of a transmittal form by the EEOC to the MCHR is sufficient to constitute an initially instituted charge by the plaintiff.

*Lopez* and the cases upon which it relies are persuasive and directly address this issue. In *Lopez,* the Court interpreted § 706(e) and determined that the 180 day period for filing a charge with the EEOC rather than the extended 300 day period applied to the case where the EEOC had a Work Sharing Agreement with a county fair employment practices agency which provided that the county would not act on charges initially received by the EEOC until the EEOC had "resolved" the matter.

*Lopez*, 493 F.Supp. at 805. The Court reasoned that because of the Work Sharing Agreement, there was no contemplation on the part of the agencies that the county agency would process the plaintiff's case before the EEOC had an opportunity to resolve the matter, and therefore the EEOC's transmittal of the charge to the Montgomery County Human Relations Commission was for informational purposes only. *Id.* Accordingly, the Court found that the plaintiff's charges were never "initially instituted" with the local deferral agency within the meaning of § 706(e) because there was no filing with the county agency with the intention it would actually process the charge. *Id.*

The holding in *Lopez* relies in part on *Doski v. Goldseker Co.*, 539 F.2d 1326 (4th Cir.1976). There, the Fourth Circuit noted that "the meaning of the phrase [initially instituted] is well settled: the state or local agency should be given first opportunity to act on the complaint." *Id.* at 1330 (brackets added). *Doski* itself relied upon the reasoning in *Ugiansky v. Flynn and Emrich Co.*, 337 F.Supp. 807 (D.Md.1972), where this Court explained the circumstances under which the expanded filing period under § 706(e) is available.

[A]s long as the state commission has been afforded the first opportunity to act on the complaint, there is a period of 210 days [now 300 days] after the date of the alleged unlawful employment practice (or 30 days) after the notice of the termination of the state commission proceedings, whichever period expires earlier,

within which the complaint may be filed with the EEOC.

*Id.* at 809, n. 4.[4]

These cases hold that the expanded filing period in § 706(e) was intended to allow state or local agencies sufficient time to process a discrimination charge before it is processed by the EEOC, and the expanded period is only available where the state or local agency has been afforded the first opportunity to act on the charge. In *Lopez*, the local agency had previously waived its right to process the charge through its Work Sharing Agreement with the EEOC. Thus the reason for the extended filing period under § 706(e) was not present and the Court refused to afford the plaintiff additional time. *Lopez*, 493 F.Supp. at 805.

■ Defendant is correct in its assertion that the reasoning and holding of *Lopez* compel a similar conclusion here. Although the order of filing is immaterial, *id.*, and the expiration of the state statute of limitations does not preclude the processing of a charge filed with the state agency within the 300 day period provided in § 706(e) where the agency is empowered to act,[5] the expanded filing period in 706(e) is not available in situations where there is no opportunity whatsoever for the state deferral agency to process the charge before the EEOC does. In these situations transmittal of the charge from the EEOC to the deferral agency is purely for informational purposes and does not constitute an "initially instituted" charge within the meaning of the Act. *Lopez*, 493 F.Supp. at 805. Where the state or local deferral agency is not empowered or authorized to

---

**4.** *See also, Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In *Mohasco*, the Supreme Court noted that the only reason for giving employees in deferral states (*i.e.*, states with an agency having jurisdiction over discrimination claims) a longer period of time in which to file a charge of discrimination than employees in states without a deferral agency was "... to give state agencies an opportunity to redress the evil at which the legislation was aimed, and to avoid federal intervention unless its need was demonstrated." *Id.* at 821.

**5.** The court in *Lopez* noted that charges must be timely filed with a state agency in order to be

afforded the extended limitations period under § 706(e). However, the Fourth Circuit has subsequently determined that the untimely filing of a charge with the state agency (under state law) does not preclude the application of the 300 day extended filing period in a Title VII case. *Citicorp*, 658 F.2d at 234 (citing *Oscar Meyer v. Evans*, 441 U.S. 750, 759, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979) (applying the above holding to cases involving the comparable state exhaustion requirement under the Age Discrimination Employment Act)).

act, either because of statutory or contractual limitations, there is no reason to allow additional time for filing charges under § 706(e). *See Mohasco*, 447 U.S. at 821, 100 S.Ct. at 2494 (*supra* n. 4). As it did in *Lopez*, the court will tie the availability of the expanded period for filing in Maryland to the purpose of the statute which is for the state agency to be afforded the opportunity to act on a charge of discrimination before the EEOC does. The Court will not arbitrarily permit plaintiffs in states with deferral agencies, not authorized to process certain claims, more time to file such claims merely because the deferral agency exists. Section 706(e) facilitates the exhaustion of state remedies, *see Citicorp*, 658 F.2d at 234, but it has no effect when the state deferral agency is without authority to process a claim or where it is contractually precluded from doing so. *See Lopez*, 493 F.Supp. at 805.

Here, the MCHR was not authorized to process the plaintiff's discrimination charge at the time of filing because the state agency previously had waived its right to be afforded the first opportunity to act on such charges under the terms of its Work Sharing Agreement with the EEOC.[6] The Agreement provides that the EEOC will take primary responsibility for processing all charges *originally received* by it, (Defendant's Exhibit 15, Work Sharing

Agreement ¶ 4.c), as well as those charges received by the EEOC more than six months, but less than 300 days, after the alleged violation. (*Id.*, at ¶ 4.c.6). Both of these waiver provisions in the Work Sharing Agreement provide a basis for the EEOC's primary and exclusive processing responsibility with regard to the plaintiff's charge. The plaintiff's charge originally was received by the EEOC *and* it was received more than 6 months but less than 300 days from the alleged discriminatory discharge on December 18, 1981; therefore, there was no expectation or intention on the part of the EEOC and the MCHR that the state agency would process or handle the plaintiff's charge even if the charge was transmitted to the MCHR. Thus, under these circumstances, the transmittal of the plaintiff's charge by the EEOC to the MCHR was for informational purposes only. *See Lopez*, 493 F.Supp. at 805. The transmittal was not undertaken in contemplation of any substantive action being taken by the MCHR.[7] The rationale for allowing the extended time filing period under § 706(e)—that the first opportunity to act on a charge of discrimination be afforded to the state deferral agency where appropriate—is lacking here as it was in *Lopez*.

Plaintiff's reliance on 29 C.F.R. § 1601.13[8] is also unavailing. The Court will con-

---

6. The Work Sharing Agreement in effect at the time the plaintiff's charge was filed with the EEOC (August 4, 1982) was executed by Dorothy E. Mead, Director of the Baltimore District Office of the EEOC on January 20, 1981, and by David Glen, Executive Director of the MCHR on February 10, 1981. The Work Sharing Agreement states, *inter alia,* that:

    [the Maryland Human Relations Commission] hereby *waives* its exclusive right to specific periods of initial processing which have been granted to [it] by Title VII for those charges assigned by this Agreement to EEOC for initial processing.

    (*See* Defendant's Exhibit 15, Work Sharing Agreement ¶ 4.d). (emphasis added).

7. The plaintiff received a letter from the MCHR indicating that the Commission would take no action concerning her complaint because "it [had] determined that [her] charge [could] best be processed by the Equal Employment Opportunity Commission (EEOC)." (Plaintiff's Exhibit 2, MCHR letter of August 11, 1982 to Patricia

Dixon). To suggest that the determination referred to in the above mentioned letter constitutes substantive action (on the part of the MCHR) sufficient to bring plaintiff's charge within the class of charges to which the extended filing period is applicable, is to elevate form over substance. Moreover, this suggestion ignores the provisions of the Work Sharing Agreement which give exclusive processing responsibility to the EEOC where charges like the plaintiff's are filed. (Defendant's Exhibit 15, Agreement ¶ 4.c. and 6.) It also ignores the information provided on the EEOC Transmittal Form No. PT882–C295–SX which indicates that the plaintiff's charge was *initially received* by the EEOC and that the EEOC had responsibility for initially *processing* the charge. (Plaintiff's Exhibit 1).

8. 29 C.F.R. 1201.13(a) (1981) reads:

    Charges arising in jurisdictions having a 706 Agency but which under the applicable state or local statute of limitations are filed

strue this regulation in a manner consistent with the statutory framework of Title VII and the rationale underlying the extended time provision in § 706(e). This regulation, like the cases relied upon by the plaintiff, applies the 300 day extended filing period to those charges filed with EEOC after the state period for filing has expired but where the state deferral agency is otherwise empowered to act on the charges. The Court will not read this regulation as applying the extended filing period to charges filed with the EEOC after 180 days where, as either a statutory or contractual matter, the state agency, in essence, is not authorized to process a charge before the EEOC has resolved the claim. To hold otherwise would attribute meaning to the regulation inconsistent with the statutory purpose of § 706(e). Certainly, the EEOC may not create or expand the statutory jurisdiction given to it by Congress. *Mohasco v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Thus, the 180 day filing period is applicable to plaintiff's discrimination charge and the charge is, therefore, untimely.

■ The Supreme Court has held that the filing of a timely charge is not jurisdictional and therefore, is subject to waiver. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). However, defendant will not be held to have waived its objection to the timeliness of plaintiff's charge because of its failure to litigate the matter before the EEOC. The EEOC's firm opposition to the *Lopez* analysis as indicated by its direct participation as *amicus curiae*, its apparent refusal to consider *Lopez* in promulgating 29 C.F.R. 1601.13, and its position that

an advance waiver is equivalent to a termination of state proceedings, *see* 46 Fed. Reg. 43037, 43038 (August 26, 1981), rather than a waiver of the right to act altogether, indicates that litigating plaintiffs' claims before the EEOC would have been a wholly futile act and would not have expedited the resolution of the instant controversy. The Court will not deem the defendant to have waived its objections to the plaintiff's charge because of its failure to avail itself of the opportunity to present its claim in a clearly unavailing forum.

■ Although the filing of a timely discrimination charge is also subject to equitable tolling and estoppel, *Zipes*, 455 U.S. at 393; *Citicorp*, 658 F.2d at 234, this is not an appropriate case in which to apply these principles because "there are no ... equities which would permit the plaintiff to bring herself within the rule[s] application." *Id.*

Plaintiff was discharged on December 18, 1981. She admits having received notice of her termination on December 19, 1981, (Plaintiff's Deposition, p. 47), yet plaintiff inexplicably failed to file her charge with the EEOC until almost eight months later.[9] Plaintiff was represented by counsel throughout and should have been aware of the judicial decision in this district which held that the 180 day limitations rule applies to charges filed with the EEOC which may not be acted upon by the MCHR. *Lopez*, 493 F.Supp. at 805. Although plaintiff had no control over the procedural requirements for the filing of a timely charge before the EEOC, she did know, or should have known, of the 180 day rule, or of the controversy surrounding

with the Commission upon receipt. Such charges are timely filed if received by the Commission within 300 days from the date of the alleged violation. Copies of all such charges will be forwarded to the appropriate 706 Agency.

9. The charge of discrimination which plaintiff filed with the EEOC confirms the fact that plaintiff understood that she had been terminated on or about the date which she was terminated. Plaintiff indicates that her lawyer initially told her that the defendant was going to rescind her

termination. However, by "sometime" in January, 1982, plaintiff definitely knew that the defendant was not going to rescind her termination. (Plaintiff's Deposition, p. 205). Thus, even if plaintiff did not learn of this refusal to rescind her termination until January 31, 1982, and assuming *arguendo* that this date is used to determine when defendant's alleged act of discrimination occurred, plaintiff still did not file a timely charge of discrimination with the EEOC within 180 days.

the interpretation of the statute of limitations.

Having found that plaintiff's claim of discrimination is time barred, and that neither waiver, tolling, nor estoppel principles are appropriate for application in this case, plaintiff's Title VII claim accordingly will be dismissed.

### III. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

■■■ The facts alleged by the plaintiff in support of her claim under Title VII are essentially the same facts which she contends constitute a claim for the intentional infliction of emotional harm under Maryland law. (*See* Plaintiff's Complaint, Count II). Although plaintiff makes no mention of the collective bargaining agreement in existence at the time of her termination, plaintiff's state law claim is nonetheless based on the "outrageous conduct" which forms the basis of a breach of the collective bargaining agreement. *See Morris v. Owens-Illinois*, 729 F.2d 1453 (4th Cir.1984), The Daily Record, March 31, 1984, at 1, col. 4. Through her state claim the plaintiff is essentially attempting to enforce her right to continued employment in the absence of just cause for discharge pursuant to the terms of the collective bargaining agreement. Thus, federal law governs the resolution of this claim. *See Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Federal labor policy requires that an employee covered by a collective bargaining agreement exhaust any contractual remedies, such as grievance and arbitration, before bringing suit for violation of the collective bargaining agreement. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Contract grievance procedures are the preferred method for settling disputes and stabilizing the "common law" of the plant, *id.* at 653, 85 S.Ct. at 616, and an "aggrieved employee [whose contractual remedies have not been exhausted] cannot sidestep a federally mandated grievance process merely by pleading emotional injury." *Morris, supra,* Daily Record at 2, col. 1, (citing *Magnuson v. Burlington Northern,* 576 F.2d 1367 1369 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)).

Plaintiff has not exhausted her contractual remedies. The collective bargaining agreement between Westinghouse and the Salaried Employees Association contained an exclusive grievance and arbitration procedure for handling claims of wrongful discharge. (Agreement §§ XV, XV–A). The agreement specifically provides that in the event a grievance is not processed beyond the third step Local Grievance Procedure to the National Appeal Level within thirty days after the company has given its written answer at the third step level, the union "shall not be considered as having fully exhausted the grievance procedure." (Agreement § VX(2)(D)(2)). Neither the union nor the plaintiff pursued the grievance beyond the third step after the defendant gave its written notice rejecting the grievance. Plaintiff's grievance was not processed beyond the third step. (*See* Defendant's Exhibit D). Thus, it is clear that the plaintiff has failed to exhaust the grievance-arbitration procedures provided in the collective bargaining agreement and she may not maintain her claim alleging the intentional infliction of emotional harm. *See Morris, supra,* Daily Record at 2, col. 1. Accordingly, defendant's supplemental motion for summary judgment will be granted and judgment entered for defendant.