KNOLL, Judge.
Jan Jumonville d/b/a Tropical Fishbowl (hereafter Jumonville) appeals the judgment of the trial court ordering her to pay rent pursuant to a written agreement for the unexpired term of the lease to the Estate of J.Y. Foreman, Burdin Madison, Inc., and James Domengeaux (hereafter collectively referred to as Foreman). The *1033 trial court ruled that Jumonville was personally liable for the rent, that the written lease was timely renewed, and that the rent, utilities and damages to the premises totaled $9,012.50. Jumonville appeals, contending the trial court erred: (1) in holding Jumonville personally liable; (2) in concluding that the lease was renewed, or alternatively, that if renewed, it was modified by the parties; and (3) in determining Jumon-ville owed utilities on the renewed lease premises for the unexpired term of the lease. We affirm.
FACTS
On November 1, 1979, Foreman, by written agreement, leased 1,000 square feet of office space in Lafayette at $500 per month to Jumonville for a term of thirty-six months with an option to renew for an additional three year period.
On August 31,1982, Jumonville returned a letter from Foreman, who sought notification of her intention regarding renewal of the lease, with a handwritten notation that she would renew the lease for $700 per month contingent upon air conditioning being extended to another section of the premises. During the renewal period, Ju-monville, at her request, was given an additional 1,000 square feet for $100 per month. Accordingly, Jumonville’s monthly rental to Foreman totaled $800.
Jumonville vacated the leased premises on April 6, 1985.
Subsequently, Foreman sued Jumonville for rent for the unexpired term of the lease, her pro rata share of utilities for that term, and damage to the leased premises.
LESSEE-CAPACITY
Jumonville contends that she is not personally liable for an obligation of Tropical Fishbowl. She argues that in the written lease: (1) Tropical Fishbowl is designated as lessee; (2) the signature page reflects Tropical Fishbowl is the lessee; and (3) the lease agreement makes no reference to her individual liability.
When the lease was signed, Tropical Fishbowl was unincorporated and, though it was incorporated two years later, the lease was never assigned to the newly formed corporation.
Unlike the provisions of LSA-C.C. Art. 435 which recognize that corporations have a legal entity separate from the persons who compose them, a person who does business under a trade name makes himself personally liable for contracts of the business. Krawfish Kitchen Restaurant, Inc. v. Ardoin, 396 So.2d 990 (La.App. 3rd Cir.1981).
Jumonville does not deny her signature to the lease or the renewal notice nor does she establish any capacity other than individually. First National Bank of Shreveport v. Williams, 346 So.2d 257 (La.App. 3rd Cir.1977), establishes the presumption that all persons possess the capacity to contract. The person trying to overcome this presumption must do so convincingly and by the great weight of the evidence. Meadors v. Pacific Intern. Petroleum, Inc., 449 So.2d 26 (La.App. 1st Cir.1984), writ denied, 450 So.2d 964 (La.1984). With these principles in mind we cannot say that the trial court erred in finding Jumonville personally liable.
LEASE RENEWAL
Jumonville next contends that the terms of the original lease were not extended but, instead, were modified into a new oral lease.
The original lease provided in pertinent part as follows:

“Lessee shall have the exclusive right and privilege of renewing this lease for one (1) additional term of three (3) years following the expiration of this lease, subject to the same general terms and conditions except the amount of monthly rent due. The rate of rent shall increase or decrease (but not below the stated price herein) to reflect the consumer price index for the calendar year preceeding [sic] the renewal of this lease as published by the Bureau of Labor Statistics in the Monthly Labor Review. ”

*1034 On August 81, 1982, Foreman sent a letter to Jumonville apprising her of a rent increase to $700 for the premises originally leased for the renewal period, and asking her to advise in writing if she intended to exercise the option to renew. In a written note Jumonville stated, “We intend to renew with the terms of the old lease. The only thing we want is air conditioning in the bird room.” The evidence preponderates that the air conditioning was extended and it is undisputed that Jumonville remained on the premises an additional 28 months.
Notwithstanding Jumonville’s written renewal, she argues that a new oral lease was confected when she was given an additional 1,000 square feet of rental space for $100 per month. Through this argument Jumonville attempts to forestall Foreman’s attempt to collect lease payments for the unexpired lease term, contending that now the original written lease term was superseded and now the lease was from month-to-month.
We disagree with Jumonville’s contention that a new oral lease was entered into for the entire leased premises. Jumonville’s actions belie her position. Through the original written lease she was obligated to pay a pro rata share of the mall utilities. If there had been a totally new lease created with the addition of the increased space, she would not have been liable for utilities since that item was not an element of rent. On the contrary, even after being granted the additional space, Jumonville continued to pay utilities as billed by Foreman.
Therefore, the evidence clearly shows that Jumonville had a three year extended lease through renewal of the original lease and an oral month-to-month lease on the additional leased premises obtained subsequently.
UTILITIES
Lastly, Jumonville contends that the trial judge incorrectly cast her with the cost of utilities because Foreman presented no evidence to differentiate between utilities in the original written lease and those attributable to the additional square footage leased orally. The premise underlying Jumonville’s argument is that under the oral lease she was not obligated to pay utilities on the additional square footage.
The record reflects that without objection Foreman introduced evidence that Ju-monville’s prorated utility bill under the written and oral leases totaled $2,821.78, an average of $403.11 per month. The trial judge only awarded $187.50 per month for utilities, the amount pleaded in Foreman’s petition. Clearly, the trial court differentiated between the two leased areas and adjusted the award accordingly. We find no abuse of discretion in the trial court’s award with reference to utilities.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Jumonville.
AFFIRMED.