**LOUISIANA ACORN FAIR HOUSING**

v.

**QUARTER HOUSE, Oak Ridge Park, Inc., et al.**

Civil Action No. 96–2128.

United States District Court, E.D. Louisiana.

Jan. 9, 1997.

Spencer Livingston, New Orleans, LA, Thomas Wilson Glass, Citizens Consulting, Inc., New Orleans, LA, for Louisiana Acorn Fair Housing.

Ronald L. Naquin, Wilbur Anthony Toups, III, Scott Cameron Barney, Robert Lloyd Clayton, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Quarter House, Oak Ridge Park, Inc., Quarter House Owners' Association.

Brian F. Heffernan, Paul F. Hancock, Jerri U. Dunston, U.S. Department of Justice, Civil Rights Division, Housing & Civil Enforcement Section, Washington, DC, for U.S.

Marc Norman DuBois, New Orleans Legal Assistance Corp., New Orleans, LA, Stacy Elizabeth Seicshnaydre, Greater New Orleans Fair Housing Action Center, Inc., New Orleans, LA, for Greater New Orleans Fair Housing Action Center.

## ORDER AND REASONS

CLEMENT, District Judge.

Before the Court are defendants Quarter House, Oak Ridge Park, Inc. and Quarter House Owner's Association Inc.'s Motions to Dismiss pursuant to Fed.R.Civ.Proc. 12(b)(1), Rule 12(b)(4), Rule 12(b)(6) and Motion for Summary Judgment pursuant to Fed.R.Civ. Proc. 56(b). For the following reasons, defendants' Motion to Dismiss as to Quarter House is GRANTED; defendants' Motion to Dismiss for insufficiency of process pursuant to Rule 12(b)(4) is DENIED; defendants' Motion to Dismiss Quarter House Owners' Association and Oak Ridge Park is DENIED; Defendants' Motion for Summary Judgment as to Quarter House Owners' Association is GRANTED; defendants' Motion to Dismiss plaintiff's claims under Title 42 U.S.C. §§ 1981 and 1982 is DENIED; defendants' Motion to Dismiss plaintiff's claim under the Thirteenth Amendment is GRANTED; and defendants' Motion for Summary Judgment as to Oak Ridge Park is DENIED.

## BACKGROUND

Quarter House is the trade name of a timeshare resort which has provided recreational units adjacent to the French Quarter since 1983. According to the defendants, the Quarter House Owners' Association, Inc. ("Owners' Association") is composed of purchasers of Quarter House timeshare units which administers and operates the timeshare units. The Owners' Association appoints a board of directors and officers to promulgate rules and regulations regarding the use of the units and the common elements which all units share, as well as assessing fees necessary to keep the units and common areas in good working order. The defendants claim that the Owners' Association is not involved at any level in the sales or marketing of the Quarter House timeshare units.

In order to market Quarter House timeshare units, field marketing representatives ("FMRs") have been employed to approach pedestrians in and around the French Quarter and convince them to tour the Quarter House timeshare units. The tours take place on the premises of the Quarter House under the direction of a touring agent. The complaint alleges that these FMRs, whose pay checks are drawn from Oak Ridge Park Inc.'s bank account, are paid on commission and are only compensated when they send prospective residents to Quarter House who comply with Quarter House's qualification list. According to the complaint, this list is communicated verbally by Quarter House employees to the FMRs. The qualification list requires that prospective buyers cannot be 1) African–American; 2) aliens; 3) of mid–Eastern or Indian cultures or religions; 3) physically unable to climb stairs; and 4) pregnant women, families with more than two children or families with children under the age of 10. The complaint alleges that when FMRs would send touring agents prospective buyers who were members of one of the above mentioned groups, the agents refused to show these individuals timeshare units while offering tours to other buyers

who did not belong to one of the groups. On June 24, 1996, plaintiff filed the present suit, alleging violations of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.* ("the Fair Housing Act" or "the FHA"), La.R.S. 51:2601 *et seq.* ("the Louisiana Open Housing Act"), 42 U.S.C. §§ 1981 and 1982, and the Thirteenth Amendment.

### ANALYSIS

*1. "Quarter House" Status as a Defendant*

Defendants first argue that defendant Quarter House should be dismissed as a party pursuant to Rule 12(b)(6) because Quarter House is only a trade name and not a proper party defendant.

 Article 736 of the Louisiana Code of Civil Procedure provides that "a person who does business under a trade name is the proper defendant in an action to enforce an obligation created by or arising out of the doing of such business." Louisiana courts have held that a trade name has no separate existence apart from the individual doing business under that trade name. *Trombley v. Allstate Insurance Co.*, 640 So.2d 815, 817 (La.App. 3 Cir.1994). Moreover, a trade name is not a separate entity capable of being sued. *Guidry v. City of Houma*, 471 So.2d 1056, 1058 (La.App. 1 Cir.1985).

Given that a trade name is not a separate entity capable of being sued under Louisiana law, the Court GRANTS defendants' motion to dismiss Quarter House as a defendant.

*2. Service of Process on Quarter House Owners' Association, Inc. and Quarter House*

Defendants next move for dismissal of claims against Quarter House Owners' Association and Quarter House pursuant to Rule 12(b)(4) on the ground that the summons served upon Quarter House Owners' Association incorrectly identified defendant as "Quarter House Homeowners Association, Inc." As the Court has already dismissed Quarter House as a defendant, the Court will only address whether there was insufficient process on defendant Quarter House Owners' Association.

 "When an alleged defect in service is due to a minor, technical error, only actual prejudice to the defendant or evidence of a flagrant disregard of the requirements of the rules justifies dismissal." *Libertad v. Welch*, 53 F.3d 428, 440 (1st Cir.1995); *see also* 4A C. Wright and A. Miller, *Federal Practice & Procedure*, Civ.2d § 1088; *Sanderford v. Prudential Ins. Co. of America*, 902 F.2d 897, 900 (11th Cir.1990); *Crane v. Battelle*, 127 F.R.D. 174, 177 (S.D.Cal.1989) (erroneously naming defendant "Leonard Colin" rather than "Colin Lennard" in the summons and complaint is a mere technical error that does not prejudice defendant's rights when there is actual notice).

Defendants have offered no evidence in their memoranda that Quarter House Owners' Association did not receive notice or has suffered any prejudice from plaintiff's technical error. The Court finds that plaintiff's technical error in identifying defendant as "Homeowners" as opposed to "Owners" does not warrant dismissal under Rule 12(b)(4).

*3. Defendants' Rule 12(b)(6) Motion as Quarter House Owners Association and Oak Ridge Park, Inc.*

Defendants next claim that plaintiff has failed to allege a claim against Quarter House Owners' Association and Oak Ridge Park, Inc. under Rule 12(b)(6) and that plaintiff has failed to comply with Fed.R.Civ.Proc. 8(a).

Under Fed.R.Civ.Proc. 8(f), a complaint must be construed liberally so as to do substantial justice. *Palmer v. City of San Antonio, Texas*, 810 F.2d 514, 517 (5th Cir.1987); *U.S. v. Uvalde Consol. Independent Sch. Dist.*, 625 F.2d 547, 549 (5th Cir.1980). A dismissal for failure to state a claim upon which relief may be granted cannot be upheld "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In reviewing such a dismissal, a court must examine only the pleadings, accept the factual averments as true, and view them in the light most favorable to the plaintiff. *Rankin*

*v. City of Wichita Falls, Texas,* 762 F.2d 444, 446 (5th Cir.1985).

■ Given plaintiff's complaint and the standard for dismissal under Rule 12(b)(6), the Court finds that plaintiff has stated a claim. Although the complaint is at times vaguely worded and frequently refers obliquely to "Quarter House" or "Defendants," the Court finds that plaintiff has presented sufficient facts under Rule 12(b)(6) to withstand defendants' motion. Plaintiff first alleges that defendant Oak Ridge Park, Inc. owns and manages the Quarter House and that "upon information and belief, defendant Quarter House Homeowners Association, Inc. owns the Quarter House." Plaintiff also states that Quarter House trains and employs FMRs who are paid with checks drawn from Oak Ridge Park's bank account. Taking these factual averments as true and construing them in the light most favorable to the plaintiff, the Court finds that they are sufficient to withstand defendant's Rule 12(b)(6) and comply with the standards of Rule 8.

### 4. Defendants' Motion for Summary Judgment as to Quarter House Owners' Association, Inc.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Once the movant produces such evidence, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* The nonmovant can satisfy its burden by tendering depositions, affidavits, and other competent evidence to buttress its claim. *Id.* It may not rest upon mere allegations made in its pleadings or conclusory allegations without setting forth specific facts establishing a genuine issue worthy of trial. *Id.* In evaluating the evidence tendered by the parties, the Court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ Defendants claim that there is no genuine issue of material fact and that the Owners' Association, Inc. is entitled to judgment as a matter of law because plaintiff has provided no evidence to support a finding that the Owners' Association was at all involved with the marketing or sales of Quarter House units. Defendants submitted to the Court an affidavit from Mary Estrada, a director of the Owners' Association, Inc. from 1993 to the present which states that 1) the Owners' Association administers and operates the Quarter House through a board of directors; 2) the board of directors promulgates rules and regulations regarding use and occupancy of the individual timeshare units and the common areas of Quarter House; 3) the Owners'. Association, Inc. does not own title to any realty associated with the Quarter House resort; 4) the powers and authorities of the Owners' Association do not include any right to participate in the sale or marketing of Quarter House timeshare unit weeks, and that the Owners' Association is not a party to any sales transactions and receives no proceeds or funds from any sales; and 5) the Owners' Association has not been involved at any level in any effort to market unit weeks in the Quarter House resort. Plaintiff has provided the Court with no affidavits or evidence in its original or supplemental memorandum to demonstrate that the Owners' Association has had any involvement in the marketing or sales of Quarter House units. Without providing any evidence to link the Owners' Association with the alleged conduct, the plaintiff cannot hold the Owners' Association liable for alleged offenses emanating from these activities. Accordingly, the Court finds that there exists no genuine issue of material fact and finds that Quarter House Owners' Association is entitled to judgment as a matter of law.

*5. Defendants' Motion to Dismiss Plaintiff's Title 42 U.S.C. §§ 1981 and 1982 Claims*

Defendants contend that plaintiff has failed to assert a cause of action under 42 U.S.C. §§ 1981 and 1982 because plaintiff's claim is based upon defendants' alleged discriminatory advertising practices. The Court finds that defendant's argument misconstrues the complaint.

The Supreme Court has held that 42 U.S.C. § 1981 and § 1982 should be construed together. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). 42 U.S.C. § 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1982 provides that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherent, purchase, lease, sell, hold, and convey real and personal property.

For plaintiff to withstand defendants' motion to dismiss claims under §§ 1981 and 1982, the complaint must allege that defendants denied plaintiff the same right to lease and own property as is enjoyed by white citizens. The Court finds that the complaint has satisfied this threshold.

■ Although defendants contend that plaintiff's §§ 1981 and 1982 claims are based only on "advertising practices," paragraph 13 of the complaint alleges that Quarter House agents would refuse to exhibit model units to prospective buyers who were "not qualified" by virtue of membership in a racial, ethnic or handicap group while at the same time offering tours to potential buyers who were not members of the above mentioned groups. While defendants are correct that using discriminatory advertising practices are not covered by §§ 1981 and 1982, *see Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the Court finds that plaintiff has alleged that defendants have denied nonwhite citizens the same right to lease and own property as possessed by white citizens. In accepting the factual averments in the complaint as true and in a light most favorable to the plaintiff, the Court DENIES defendants' Motion to Dismiss.

In a footnote, defendants also argue that an alternate ground for dismissing plaintiff's claims is the "well-settled principle of law" that fair housing organizational plaintiffs lack standing to prosecute §§ 1981 and 1982 claims. The Court finds this argument equally unavailing.

■ "The only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination." *City of Chicago v. Matchmaker Real Estate Sales Center, Incorporated*, 982 F.2d 1086, 1095 (7th Cir.1992) (quoting *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir.1990)). The complaint alleges that ACORN is a nonprofit corporation whose activities include education and information services, housing referral services, and mediation and conciliation of disputes arising from fair housing violations. The complaint asks for damages based on its staff time, volunteer time, and other costs it has expended in efforts that have been thwarted by Defendants. From this evidence, the Court concludes that ACORN has standing to sue.

*6. Defendants' Motion to Dismiss Plaintiff's Claim under the Thirteenth Amendment*

■ In the complaint, plaintiff states that "All of the above acts and conduct of Defendants constituted violations of the AFH LA's right to be free from racial discrimination in contracting for and renting property under 42 U.S.C. §§ 1981 and 1982 and the Thirteenth Amendment to the United States Constitution." (Plaintiff's Complaint, ¶ 19). If plaintiff is attempting to allege a cause of action under the Thirteenth Amendment, defendants are correct in asserting that the

Amendment does not give rise to a private cause of action. *Sanders v. A.J. Canfield Co.*, 635 F.Supp. 85, 87 (N.D.Ill.1986); *Westray v. Porthole, Inc.*, 586 F.Supp. 834, 838–39 (D.Maryland 1984); *Lopez v. Sears, Roebuck and Co.*, 493 F.Supp. 801, 806 (D.Maryland 1980). Accordingly, the Court GRANTS defendants' motion to dismiss plaintiff's claim under the Thirteenth Amendment pursuant to Rule 12(b)(6).

### 7. Defendants' Motion for Summary Judgment as to Plaintiff's Claims under 42 U.S.C. § 3601 et seq. and La.R.S. 51:2601 et seq.

Defendants contend in their Motion to Dismiss and/or for Summary Judgment that plaintiff has failed to state a viable claim for relief under the Fair Housing Act, as amended, 42 U.S.C. 3601 et seq., ("FHA") and the Louisiana Open Housing Act, La.R.S. 51:2601 et seq. ("LOHA"). As the definition of "dwelling" under LOHA is identical to the definition of dwelling under FHA and because there is no Louisiana case law on this point, the Court will consider whether Quarter House timeshare units are residential dwellings under the FHA.

The FHA prohibits discrimination in the rental or sale of a "dwelling" on the basis of race, color, religion, national origin, handicap and familial status. 42 U.S.C. § 3601 *et seq.* The Supreme Court considers the language of the FHA "broad and inclusive." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972).

■■■ In order for plaintiff to state a claim for relief under the FHA, plaintiff must first establish that discrimination occurred in a property that is a "dwelling" within the meaning of the FHA. 42 U.S.C. § 3602 defines a dwelling as:

> any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure or portion thereof.

As there is no further indication in the statute as to how Congress would require a court to interpret the meaning of "dwelling," this Court will accord considerable weight to an executive department's construction of a statutory scheme which the department is entrusted to administer. *Chevron U.S.A., Inc. v. Natural Resources Defense*, 467 U.S. 837, 846, 104 S.Ct. 2778, 2783–84, 81 L.Ed.2d 694 (1984); *see also Phillips v. Marine Concrete Structures, Inc.*, 877 F.2d 1231, 1234 (5th Cir.1989) (as to two reasonable interpretations of a statute, a court owes deference to the one proffered by the agency charged with administering it). In particular, the Supreme Court has held that HUD's administrative construction of the FHA is entitled to "great weight." *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972) (letter opinion of HUD was entitled to great deference).

In the Preamble to Regulations issued in 1988, HUD stated that § 3602 was "broad enough to cover each of the types of dwellings enumerated in the proposed rule: mobile home parks, trailer courts, condominiums, cooperatives, and timesharing properties." Preamble I, 24 C.F.R. Ch. 1, Subch. A, App. I, 54 Fed.Reg. 3232, 3238 (Jan. 23, 1989). As mentioned above, HUD had considered including specific examples of dwellings in its final rule but "determined that, on balance, the need to leave open the extent and scope of the terms defined in the Fair Housing Act outweighs the need to provide comprehensive examples in connection with this rulemaking." *Id.*

The Court finds HUD's interpretation to be persuasive. The clear language of the preamble states that HUD intended the term dwelling to be "clearly broad enough" to include timeshare properties. Moreover, the fact that these examples were not part of the final rule but were included in HUD's proposed rule and mentioned in the preamble demonstrates that HUD intended the FHA to encompass at a minimum, those examples set out in the proposed rule but also viewed the FHA as covering a wider variety of structures than those mentioned in the proposed rule. As HUD is partially responsible

for enforcement for the FHA, the Court accords significant weight to HUD's interpretation of a timeshare unit.

■ The Court next looks to the caselaw interpreting whether certain residential arrangements are considered dwellings within the FHA. The FHA defines a dwelling as a "residence by one or more families." 42 U.S.C. § 3602. In determining whether a dwelling is a residence under the Act, courts have looked to the ordinary meaning of "residence" adopted in *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 548–49 (W.D.Va.1975). *See United States v. Columbus Country Club*, 915 F.2d 877 (3rd Cir. 1990); *Villegas v. Sandy Farms, Inc.*, 929 F.Supp. 1324 (D.Or.1996); *Hernandez v. Ever Fresh Co.*, 923 F.Supp. 1305 (D.Or. 1996); *Woods v. Foster*, 884 F.Supp. 1169 (N.D.Ill.1995); *Baxter v. City of Belleville, Ill.*, 720 F.Supp. 720 (S.D.Ill.1989). The *Hughes* court, taking its definition of residence from Webster's Third New International Dictionary, defined a residence as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Hughes*, 396 F.Supp. at 549. Courts have given the FHA a generous construction and have found that summer bungalows [1], farm labor camps [2], an AIDS hospice [3], a childrens' home [4], a homeless shelter [5], a nursing home [6], a cooperative apartment building [7] are all dwellings while finding that a motel [8] is not a dwelling. In making these determinations, courts have generally considered the length of time a person stayed at the "residence" and whether the person intended to return.

■ The Court finds that the facts of the present case are more analogous to the *Columbus* case than to the facts of the *Patel* case. In *Columbus*, the court found that bungalows were dwellings under the FHA since annual members could spend up to five months in their bungalows, most returned to these bungalows each summer, and each resident owned a right to return to his bungalow. Moreover, the court in *Columbus* found that Congress did not intend the FHA to only apply to year-round places of abode and exempt seasonal dwellings. *Columbus*, 915 F.2d at 881. In *Patel*, the district court rejected plaintiff's claim that a motel was a dwelling under the FHA because the motel was a commercial venture and a public accommodation, and no plaintiff intended to reside in the motel. *Patel*, 483 F.Supp. at 381. Here, purchasers of a Quarter House unit do not purchase a one night stay at a motel but instead possess the right to return every year to the same residential unit until 2032. There is no limit on the number of weeks in a unit that a Quarter House resident can purchase, and like any other property owner, Quarter House residents pay a mortgage and taxes on their property. Although defendants claim that historically 40% of Quarter House purchasers acquire a unit because of their ability to exchange their unit for another timeshare in a different area of the country, this right is limited by a provision in the Agreement For Sale and Purchase that Quarter House does not guarantee the availability of the exchange program. However, many Quarter House purchasers do exercise their right to return and the most important fact in this analysis is that Quarter House owners possess the right to return to their unit. What these owners decide to do with this right, as is true with any property owner, is their own decision. Moreover, the FHA is intended to prevent discrimination in the rental or sales of housing. Timeshares, because they involve the ownership a housing right, fall within the

1. *United States v. Columbus Country Club*, 915 F.2d 877 (3rd Cir.1990).

2. *Hernandez v. Ever Fresh Co.*, 923 F.Supp. 1305 (D.Or.1996).

3. *Baxter v. City of Belleville, Ill.*, 720 F.Supp. 720 (S.D.Ill.1989).

4. *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 549 (W.D.Va.1975).

5. *Woods v. Foster*, 884 F.Supp. 1169 (N.D.Ill. 1995).

6. *Hovsons Inc. v. Township of Brick*, 89 F.3d 1096 (3rd Cir.1996).

7. *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir.1979).

8. *Patel v. Holley House Motels*, 483 F.Supp. 374 (S.D.Ala.1979).

**360**

purview of the FHA. Courts which have considered cases dealing with this issue have involved unique factual situations, such as facilities which provide shelter to children, AIDS patients, and the homeless, residences which do not concern the FHA's core protected activities, the rental or sale of housing. Given HUD's interpretation of timeshares, the property rights that Quarter House residents possess, and the fact that the FHA is intended to prevent discrimination in the rental and sales housing market, the subject of the present case, the Court finds that Quarter House timeshare units are dwellings within the meaning of the FHA. Accordingly, the Court DENIES defendants' Motion for Summary Judgment as to Oak Ridge Park, Inc. Accordingly,

IT IS ORDERED that defendants' Motion to Dismiss as to Quarter House is GRANTED; defendants' Motion to Dismiss for insufficiency of process pursuant to Rule 12(b)(4) is DENIED; defendants' Motion to Dismiss Quarter House Owners' Association and Oak Ridge Park is DENIED; Defendants' Motion for Summary Judgment as to Quarter House Owners' Association is GRANTED; defendants' Motion to Dismiss plaintiff's claim under Title 42 U.S.C. §§ 1981 and 1982 is DENIED; defendants' Motion to Dismiss plaintiff's claim under the Thirteenth Amendment is GRANTED; and defendants' Motion for Summary Judgment as to Oak Ridge Part is DENIED.