**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 98-30974

_____

ENDRIAS GEBREYESUS, doing business as ODA Trading Agency,

Plaintiff-Appellant,

versus

FC SCHAFFER & ASSOCIATES, INC.

Defendant-Appellee

and

MESFIN GEBREYES; KIFLE GEBRE.

Appellees.

--------------------------------------------------------------------------------

FC SCHAFFER & ASSOCIATES INC

Plaintiff-Appellee

and

MESFIN GEBREYES; KIFLE GEBRE

Appellees

versus

ENDRIAS GEBREYESUS, doing business as ODA Trading Agency

Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of Louisiana

March 6, 2000

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Endrias Gebreyesus ("Endrias") appeals the district court's dismissal of his breach of contract claims against F.C. Schaffer & Associates, Inc. ("Schaffer").[1] Finding that the district court erred in interpreting the agreements at issue, we reverse the judgment of the district court and remand for further findings.

I

This case arises out of the alleged breach of a series of contracts between Schaffer and ODA Trading Agency ("ODA"). Schaffer is an engineering firm based in Baton Rouge, Louisiana. ODA is an Ethiopian entity that represents international companies, like Schaffer, wishing to do business in Ethiopia. Endrias is the founder and purported owner of ODA. During the relevant time period, Mesfin Gebreyes ("Mesfin") was a full-time employee of ODA.[2] Kifle Gebre ("Kifle") worked as an independent contractor of ODA, receiving one-third of the gross profits from projects that he brought to the business.

In 1989, Endrias left Ethiopia for the United States, where he resided until 1993. Shortly after Endrias' departure, Kifle brought the representation of Schaffer to ODA. After learning that the Ethiopian Sugar Corporation had decided to build a cane sugar mill and ethanol plant in Finchaa, Ethiopia (the "Finchaa Project"), Kifle contacted Schaffer about bidding for the Project. Schaffer expressed interest in the project, and, in 1990, Schaffer and ODA entered into a Representation Agreement (the "1990 Agreement"). Under the terms of the 1990 Agreement, Schaffer was to pay

---

[1]    Endrias also appeals the district court's denial of his motions to amend the judgment and to stay execution of the judgment. In light of our disposition, we need not address these motions.

[2]    While technically an employee of ODA, Mesfin shared in ODA's net earnings equally with Endrias.

ODA a commission if it was ultimately the successful bidder on the Finchaa Project. The agreement also (1) identified ODA as the agent of Schaffer, (2) designated Mesfin as the ODA personnel assigned to work on the Finchaa Project, and (3) provided that ODA was to inform Schaffer of any changes in ownership of ODA. Kifle signed his own name to the contract on the signature line designated for "ODA Trading Agency."

In 1992, Mesfin informed Schaffer that the ownership in ODA had changed substantially and that it was "being restructured by a new foreign trade licence No. 000375 in the name of ODA Trading with the main shareholder being Mesfin Gebreyes." In response to this purported change in ownership, a new Representation Agreement was executed (the "1992 Agreement"). The terms of the 1992 Agreement were virtually identical to those in the 1990 Agreement and purported to cancel the 1990 Agreement. Significantly, as in the 1990 Agreement, the 1992 Agreement identified the parties to the contract as Schaffer and ODA.[3] Mesfin signed his name above the "ODA Trading Agency" signature line.

In May 1993, Schaffer learned that it was the low bidder on the tender for the Finchaa Project. Two months later, Endrias returned to Ethiopia. Upon his return, he contacted Schaffer to "introduce" himself as the owner of ODA. Schaffer, having never before worked with or heard of Endrias, resisted the idea of working with him on the sensitive Finchaa Project. Accordingly, when Mesfin and Kifle left ODA in 1994 to form their own company, Schaffer entered into a new representation agreement with them as individuals (the "1994 Agreement"). The 1994 Agreement purported to "superced[e] and replac[e] all prior contracts, agreements or understandings between

---

[3] Tellingly, Endrias contends, and testimony from Schaffer vice president and general manager Geralyn Graphias confirms, that Schaffer was unwilling to sign a proposed 1992 Agreement that designated Mesfin and his wife as agents of Schaffer.

the parties, with regard to the subject matter hereof." Shortly thereafter, Schaffer required Mesfin and Kifle to sign an indemnity agreement.

After receiving payments from the Ethiopian government for the Finchaa Project, Schaffer, pursuant to the terms of the 1994 Agreement, paid commissions only to Mesfin and Kifle. When Schaffer refused to pay any commission to ODA, Endrias sued Schaffer, claiming breach of the 1990 and 1992 Agreements and seeking recovery of the commissions and other expenses allegedly due under the contracts. Under the terms of the indemnity agreement, Schaffer interpled Mesfin and Kifle.

On the second day of trial, the district court granted Schaffer's motion for judgment as a matter of law, thereby dismissing Endrias' claims against Schaffer. Relying upon Schaffer's testimony at trial, the court found that at the time Schaffer executed the 1990 and 1992 Agreements, it believed that it was contracting only with Mesfin and Kifle and "did not know, or care, at that time what trade name, or other name, they used." Finding that the 1990 Agreement was a "perfectly valid contract between Schaffer and Kifle and Mesfin, who, at that time, were doing business as ODA Trading Agency" and that "[t]he 1990 Agreement was certainly superseded by the 1992 Agreement, and the 1992 Agreement was superseded by the 1994 Agreement," the court concluded that "Endrias was not a party to any of these agreements." Accordingly, Schaffer could not be liable to Endrias for breach.[4] Endrias filed this timely appeal.

The standard of review for a bench trial is well established: "findings of fact are reviewed for clear error; legal issues de novo." *FDIC v. McFarland*, 33 F.3d 532, 536 (5th Cir. 1994). Since this case comes to us through diversity jurisdiction, we apply the substantive law of Louisiana. *See Erie*

---

[4]     Schaffer, Mesfin and Kifle then settled the third party demand.

*R.R. v. Tompkins,* 304 U.S. 64, 78-79, 58 S.Ct. 817, 822, 82 L. Ed. 1188 (1938).  Under Louisiana

law, the interpretation of a contract and the determination of ambiguities are questions of law.  S*ee*

*Abbott v. Equity Group, Inc.*, 2 F.3d 613, 626 (5th Cir. 1993) (citing *Carter v. BRMAP*, 591 So.2d

1184, 1188 (La. Ct. App. 1991)); *Patterson v. City of New Orleans*, 686 So. 2d 87, 90 (La. Ct. App.

1996). Where a court determines that ambiguity exists and makes factual determinations of intent,

we review those factual findings for clear error.  *See Amoco Prod. Co. v. Fina Oil & Chem. Co.*, 670

So. 2d 502, 511 (La. Ct. App. 1996).

II

Prior to dismissing Endrias' claims against Schaffer, the district court determined that the

parties to the 1990 and 1992 Agreements were Schaffer, Mesfin and Kifle.  On appeal, Endrias argues

that the evidence presented at trial demonstrates that ODA—and Endrias as owner of ODA—was

a party to the contracts, and that Mesfin and Kifle were acting only as representatives of ODA when

they signed the agreements.[5]  Schaffer agrees with the district court's finding, arguing that, in signing

the 1990 and 1992 Agreements, it intended to contract only with Mesfin and Kifle.

In general, under Louisiana law, extrinsic evidence cannot be used to "negate or vary" the

unambiguous terms of a written contract.  *See Patterson*, 686 So. 2d at 90.  "When the words of a

---

[5]    We disagree with Endrias' contention that the district court's actions constituted a "reformation" of the 1990 and 1992 Agreements.  "Reformation is an equitable remedy which is available to correct mistakes or errors in written instruments only when the instruments as written do not reflect the true intent of the parties." *Teche Realty & Investment Co., Inc. v. Morrow*, 673 So. 2d 1145, 1147 (La. Ct. App. 1996).  Here, however, the district court did not base its decision on a finding of a "mutual mistake." *See Succession of Rivers*, 702 So. 2d 910, 914 (La. Ct. App.  1998) ("Reformation is available to correct a mutual error or mistake by the parties in a contract."). Additionally, it is  clear that Schaffer's decision to name ODA, rather than Mesfin or Kifle, as its agent was deliberate. Accordingly, we view the court's actions simply as interpretation of the contracts and focus our inquiry on whether or not the court was in fact entitled to interpret the contracts given their seemingly unambiguous language.

contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046; *see also Steier v. Heller*, 732 So. 2d 787, 792 (La. Ct. App. 1999) ("When the terms of a written contract are clear, unambiguous, and lead to no absurd consequences, parol evidence cannot be used to vary or explain the contract terms, and the parties' meaning or intent must be determined from the four corners of the contract"); *Patterson,* 686 So. 2d at 90. Only where a contract is ambiguous can a court base its interpretation on extrinsic evidence. *See Patterson,* 686 So. 2d at 90. A contract is ambiguous only if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed. *See McDuffie v. Riverwood Int'l Corp.*, 660 So.2d 158, 160 (La. Ct. App. 1995).

Here, both the 1990 and the 1992 Agreements unambiguously designate ODA and Schaffer as the parties to the contracts.[6] The agreements refer to Mesfin only as the proper recipient of communications to ODA and as the key ODA personnel on the Finchaa Project. Neither agreement mentions Kifle. Furthermore, rather than signing the agreements as individuals, Mesfin and Kifle signed the 1990 and 1992 Agreements as ODA. Given such a clear expression of the parties to the

---

[6] The first page of both contracts provides as follows:

PARTIES
BY AND BETWEEN:

F.C. SCHAFFER & ASSOCIATES, INC., 1020 Florida Boulevard, Baton Rouge, Louisiana 70802, USA ("SCHAFFER") ("PRINCIPAL")

and

ODA TRADING AGENCY ("ODA") ("AGENT"), P.O. Box 3943, Addis Ababa, Ethiopia, who will provide an Ethiopian office as specified in Appendix "A" to this Agreement.

contract, the district court's decision to look to extrinsic evidence of intent—most notably Ms. Graphia's testimony that Schaffer believed that it was contracting with Mesfin and Kifle—violates the basic rules of contract interpretation. *See McFarland*, 33 F.3d at 539 ("FDIC argues that we should consider extrinsic evidence admitted by the district court regarding the intentions of the parties. We disagree. The language of the mortgage unambiguously describes the property covered as ending at the Louisiana boundary. That alone decides the case."). Just as a party cannot create an ambiguity where none exists, "a court cannot create contractual obligations where the language of the contract clearly expresses the parties' intent." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994). Here, given the clarity of the contracts, Schaffer's subjective intent was wholly irrelevant.

Accordingly, we find that because the parties to the contract were clear from the face of the agreements, the trial court erred in looking to extrinsic evidence of intent in order to determine the parties to the contract. *See McDuffie*, 660 So.2d at 160. Finding no ambiguity in either the 1990 or the 1992 Agreement, we enforce the contracts as written: as representation agreements between ODA and Schaffer.

Furthermore, because the 1994 Agreement was, on its face, between Mesfin, Kifle, and Schaffer, we find that the district court erred in finding that the 1994 Agreement superceded the 1992 Agreement. Mesfin and Kifle were not parties to the 1990 or 1992 Agreements. ODA did not execute a release of either agreement. Schaffer cannot unilaterally terminate the 1992 Agreement with ODA without the consent of ODA.[7] *Cf. LeBlanc v. City of Planquenine,* 448 So. 2d 699, 704-

---

[7]     Both the 1990 and the 1992 Agreements provided that Schaffer could terminate the contracts only if (1) ODA informed Schaffer of a substantial change in ownership of ODA and Schaffer then provided written notice of its intent to terminate, or (2) ODA, without Schaffer's

05 (La. Ct. App. 1984) ("We decide only that there are valid service agreements that cannot be unilaterally terminated for a reasonable term for the sole purpose of obtaining the electricity from another supplier."); *Casey v. Prudential Ins. Co. of America*, 360 So.2d 1386, 1388 ( La. Ct. App. 1978) ("We think it almost too elementary to state . . . that an insurer, who issues a contract for life insurance, cannot unilaterally terminate coverage for no reason other than simply paying the premium back after the covered individual has died.").

### III

Determining that that the representation agreements were between ODA and Schaffer does not fully resolve this case. We are still left without a clear determination by the district court of the legal status of ODA under Ethiopian law[8]. Without a formal resolution of this question, we are

consent, entrusted the supervision of its obligations under the contract to an individual other than the personnel listed in the contract.

[8]     We note that the district court may have impliedly determined that ODA was solely a trade name.  In granting Schaffer's JML motion, the district court found that "in this case, the error was in using the name ODA Trading Agency because apparently that name was not a proper name for Mr. Kifle and Mr. Mesfin to use, under Ethiopian law, because the trade name was a trade name owned by someone else." It is also clear to us from the record on appeal that  the district court recognized the significance of determining ODA's legal status.  Indeed, in ruling on Mesfin and Kifle's motion for summary judgment, the court requested  from the parties briefing on the following question: "Under Ethiopian law, is ODA Trading Agency simply a 'trade name', or is it something more?"  Yet while the court clearly considered this question, it never actually discussed or applied Ethiopian law when rendering its oral opinion.  Similarly, we have no evidence that it ever assessed the conflicting answers of the parties in response to its inquiry.  Accordingly, we are left only to speculate as to (1) whether the court made a  finding regarding ODA's legal status under Ethiopian law, and (2) the substance of that determination.

Moreover, because we do not know if the district court determined ODA's full legal status, we also do not know if the court did in fact find a latent ambiguity in the Agreements based on a finding that ODA, the named agent in the agreements, was simply a trade name without the capacity to contract. *Cf. Louisiana Acorn Fair Housing v. Quarter House*, 952 F. Supp 352 (E.D. La. 1997) (finding that under Louisiana law, a trade name has no separate existence apart from the individual doing business under that trade name); *Estate of J.Y. Foreman v. Jumonville*, 517 So.2d 1032,1033

unable to determine the rights and liabilities of the parties to the instant lawsuit. Accordingly, we remand the case to the district court with instructions to determine the legal status of ODA, including the ownership of ODA, and the accompanying rights of the parties.

For the reasons set out above, we REVERSE the judgment of the district court and REMAND this case for further findings of fact and law.

---

(La. Ct. App. 1987) ("Unlike the provisions of L.S.A.-C.C. Art. 435 which recognize that corporations have a legal entity separate from the persons who compose them, a person who does business under a trade name makes himself personally liable for contracts of the business."); *Cuoco v. Pik-A-Pak Grocery Corp.*, 379 So.2d 856, 859(La. Ct. App. 1980) (finding that "Li'l General Stores" was a trade name and therefore not a legal person but finding capacity to contract where contract signed by "[Corporation] d/b/a/ "Li'l General Stores"). Again, without further clarification from the district court, we are left only to hypothesize.