# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20485

United States Court of Appeals
Fifth Circuit

**FILED**

October 18, 2018

Lyle W. Cayce
Clerk

STEVEN TURNER,

      Plaintiff - Appellee

v.

GERALD YOUNG; HOPEWELL RISK STRATEGIES, L.L.C.,

      Defendants-Third Party Plaintiffs - Appellants

v.

CPST, INCORPORATED; HEALTH COST CONTROL, INCORPORATED,

      Third Party Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-3152

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

     We are tasked with reviewing the sufficiency of the evidence supporting a district court's judgment for plaintiff, following a two-day bench trial on breach of contract and Lanham Act claims. We AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20485

**I**

In 2006, Plaintiff Steven Turner purchased Moody Review, Inc., a medical bill review company with whom he had been employed for nearly a year.  Generally, medical review companies, including Moody Review, review medical bills for insurers and third-party administrators to identify which bills should be reduced or denied.  Turner then sold substantially all the assets of Moody Review to Hopewell Risk Strategies, L.L.C. (Hopewell), a newly formed entity owned by Gerald Young and Robert Clemente, in 2009.  The purchase agreement for this transaction set out a schedule for payment over time based in part on a formula.

A subsequent lawsuit between the parties led to a settlement agreement, which is the contract at issue in this appeal.  The settlement agreement provided, among other things, for Hopewell to make monthly payments to Turner.  Additionally, the agreement provided that Turner and his companies, CPST, Inc. (CPST) and Health Cost Control, Inc. (HCC), would refrain from using trade names or trademarks now belonging to Hopewell, "including, but not limited to: 'Moody', 'Moody Review', [and] Moody Review, Inc.' . . . for the purpose of, or in connection with, any trade or business in the medical bill review industry."

Pursuant to the settlement agreement, Young, through Hopewell, made monthly payments from June 2012 through July 2013.  However, in August 2013, Turner did not receive the monthly payment and emailed Young to inquire.  In his response the following day, Young attached a letter, stating "[l]ast month it was brought to my attention that you and/or one of your companies (CPST and [HCC]) are still using 'Moody Review' in the marketplace.  As a result, you have committed a material breach of the Settlement Agreement."  Young further stated in the letter that Hopewell "will

no longer make any of the monthly payments that would otherwise be due to [Turner]."

Turner again emailed Young, asking Young to provide the "who, what, where, and when," so that he "can look into it and make sure that whomever is in error is corrected immediately." Young responded that Turner's client, DakotaCare, "must believe they are working with Moody Review"[1] because "[s]everal of their denial codes point out that the Bill Review was done by Moody Review."[2] In six of over 300 codes used by Turner's client DakotaCare, the narrative stating the reason for denial stated that Turner's company had performed the review, following the reference to Turner's company with "(aka Moody Review, Inc.)" or "(aka Moody Review's)."

Hopewell later raised another ground for stopping payment. Shortly after the settlement agreement was signed in June 2012, Hopewell's director of information systems made a phone call to a phone number associated with CPST, one of Turner's companies, and recorded the answering message when no one picked up. That message, created by an employee of CPST, stated: "Thank you for calling CPST and Moody Review." Hopewell and Young asserted at trial that the failure to change the recorded answering message after the settlement agreement constituted a material breach; however, Hopewell continued to make payments on the settlement agreement after learning of the message, and the issue was not raised until over a year later at an attempted mediation of the parties' dispute.

---

[1] Young's email response also raised as a material breach that an ad in the Yellow Pages for Moody Review contained a phone number that "belongs to [Turner] or [Turner's] companies." However, Hopewell and Young abandoned this claim long before trial.

[2] Denial codes are statements of reasons, available online, corresponding with a numerical code that appears on a reviewed medical bill and explains to health care providers why certain expenses were denied.

No. 17-20485

Turner filed suit in October 2015, alleging breach of contract against Hopewell and Young, who brought counterclaims for breach of contract and violation of the Lanham Act against Turner and third-party defendants CPST and HCC, Turner's two companies.  Although the parties' earlier pleadings asserted multiple claims, the trial proceeded only on their competing breach of contract claims, as well as Hopewell and Young's Lanham Act claim.  At trial, Turner dropped his claim against Young and only asserted a breach of contract claim against Hopewell.  Hopewell and Young argued that Turner materially breached the contract by maintaining a voicemail recording that referenced Moody Review and by their client DakotaCare's references to Moody review in denial codes, entitling them to relief and excusing their own breach.  Hopewell and Young also asserted that evidence of phone calls to Hopewell related to services provided by one of Turner's companies shows confusion in the marketplace regarding the identity of the Moody Review name.

After a two-day bench trial, the district court detailed its conclusions in a thirty-four-page order, finding that Hopewell materially breached the settlement agreement by stopping payment to Turner in August 2013, and that "[n]o other party materially breached the [s]ettlement [a]greement prior to Hopewell's material breach."  According to the district court, there was no evidence that any of Turner's or his companies' conduct following execution of the settlement agreement caused confusion in the marketplace, and DakotaCare's references to Moody Review in its denial codes, and "CPST's continued use of the Moody Review name in its telephone answering message in the two weeks or so after execution of the [s]ettlement [a]greement," were not material breaches of the settlement agreement.  The district court entered judgment in favor of Turner in the amount of $407,856.28, and additionally denied relief on Hopewell's and Young's Lanham Act claims.

No. 17-20485

On appeal, Hopewell and Young challenge the sufficiency of the evidence supporting the district court's findings that the alleged breaches were not material, and contend that the district court clearly erred in finding Turner's testimony credible.[3]

## II

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo.*" *In re Mid-S. Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005). "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." FED. R. CIV. P. 52(a)(6). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Bd. of Trustees New Orleans Employers Int'l Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008). However, "[w]hen the 'district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse.'" *Ruiz v. Medina*, 980 F.2d 1037, 1038 (5th Cir. 1993) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)). We apply the substantive law of the state of Texas in this diversity action. See *Gebreyesus v. F.C. Schaffer & Assoc., Inc.*, 204 F.3d 639, 642 (5th Cir. 2000).

---

[3] Hopewell and Young also contend that the district court erred in finding that Hopewell elected to treat the contract as continuing in effect after learning of the voicemail answering message, which they later alleged was a material breach of contract, because this finding relies on a counter-defense that Turner was required, and failed, to affirmatively plead. "[T]reating a contract as continuing after a breach deprives the nonbreaching party of any excuse for terminating his or her own performance." 14 TEX. JUR. 3D CONTRACTS § 311. Because we affirm the district court's primary finding, we do not reach this secondary issue.

No. 17-20485

## III

Under Texas law, which follows the Restatement (Second) of Contracts, the fact-finder should consider the following factors to determine the materiality of an alleged breach: (1) "the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance"; (2) "the extent to which the [nonbreaching] party can be adequately compensated for the part of that benefit of which he will be deprived"; (3) "the extent to which the party failing to perform or to offer to perform will suffer forfeiture"; (4) "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances"; and (5) "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693, n.2 (Tex. 1994); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. LAW INST. 1981).

The district court concluded that neither CPST's voicemail answering message making reference to Moody Review, nor DakotaCare's denial codes containing similar references, was a material breach.  The district court's detailed factual findings provide ample support for this conclusion.  With respect to the voicemail answering message allegations, the district court made findings pertinent to four of the five Restatement factors.  With regard to factors one and two, the district court found that CPST changed its voicemail answering message shortly after the settlement agreement, that "[n]o customer or potential customer of Hopewell is shown to have ever been confused" by the message, and that "Hopewell sustained no injury, harm, or loss" because of the message.  As to factors four and five, the district court determined that "[n]either Turner nor CPST acted in bad faith or intentionally delayed changing CPST's recorded telephone message."  As for DakotaCare's

use of the name Moody Review in its denial codes, the district court made several findings going directly to the materiality factors, including that "Turner notified DakotaCare to refer no longer to CPST as Moody Review," and otherwise "promptly took action to dissociate himself and his businesses . . . from Moody Review;" that "DakotaCare has sole control over the content of its" denial codes, only six of DakotaCare's 300 denial codes referenced Moody Review, these references could easily have meant "fka" or "formerly known as," and "it is very difficult for a medical bill review company to get a client to change the content of its [denial codes];" and "Hopewell sustained no injury, harm, or loss attributable to Turner, CPST, or HCC by reason of DakotaCare's parenthetical reference to 'aka Moody Review, Inc.'"  To the extent Young and Hopewell allege that any other conduct constitutes prior material breaches by Turner or his companies, the district court found such conduct "pre-dat[ed] the [s]ettlement [a]greement" and, in any event, did not "constitute[] a material breach."

Despite these comprehensive findings, Hopewell and Young argue that "the district court's findings largely bypass [the materiality] factors," reflecting legal error.  Although the district court's fact findings do not track the materiality factors verbatim, such precision is not required.  Instead, the district court was entitled to—and did—tailor its findings to the facts of the case, accounting for the flexible and fact-bound nature of the materiality determination.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 241 cmt. a (noting materiality factors "to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances," and that "[t]his Section . . . states circumstances, not rules, . . . to be considered in determining whether a particular failure is material").  Accordingly, we perceive no legal error in the district court's materiality conclusions.

The district court's detailed findings were also supported by substantial evidence and were "plausible in light of the record viewed in its entirety." *See Ruiz*, 980 F.2d at 1038 (quoting *Anderson*, 470 U.S. at 574). The district court's findings reflect direct reliance on trial testimony from multiple witnesses. For example, Turner testified regarding efforts he took to dissociate from Hopewell and Moody Review, a Hopewell employee and Young both admitted their response to the voicemail alleged breach was delayed, and little, if any, specific evidence was presented about any harm caused by the alleged breaches. The district court also explicitly rested many of its findings on witness credibility, further reflecting that its findings should not be disturbed. *See Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1039 (5th Cir. 2015) ("[C]redibility determinations . . . are entitled to great deference on appeal, as only the trial judge was positioned to observe the demeanor of [witnesses] and to adjudge the veracity of their testimony."). Finally, despite Hopewell and Young's argument that inconsistencies and contradictory documentary evidence indicate that the district court erred in relying on Turner's testimony, no real inconsistencies exist in Turner's testimony, and no documentary evidence directly contradicts it. In short, Hopewell and Young's "assertion that the trial court clearly erred . . . essentially rests upon a line of reasoning that asks us to reweigh the evidence and decide credibility questions differently," which we will not do. *Reich v. Lancaster*, 55 F.3d 1034, 1052 (5th Cir. 1995). Accordingly, the district court did not clearly err in finding that Turner did not materially breach the contract, and correctly concluded that Hopewell's breach of contract was not excused.

We therefore AFFIRM.